EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| Karla Tatiana Rivera Lamberty | Certiorari |
| Peticionaria | |
| V. | 2020 TSPR 105 |
| José Alberto Rodríguez Amador | 205 DPR _____ |
| Recurrido | |

Número del Caso:  CC-2017-6


Fecha:  16 de septiembre de 2020


Tribunal de Apelaciones:

     Región Judicial de Carolina y Humacao, Panel X


Abogados de la parte peticionaria:

     Lcda. Pilar B. Pérez Rojas
     Lcdo. Carlos A. Cabán García


Abogado de la parte recurrida:

     Lcdo. Rubén E. Falú Allende



Materia:  Sentencia con Voto Particular Disidente

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Karla Tatiana Rivera Lamberty

    Peticionaria

       v.

                        CC-2017-0006    *Certiorari*

José Alberto Rodríguez Amador

    Recurrido

SENTENCIA

En San Juan, Puerto Rico, a 16 de septiembre de 2020.

Un matrimonio se divorcia y el exesposo reside solo en la propiedad ganancial que constituía la vivienda familiar. ¿Significa esto que usó ilícitamente el bien de la comunidad postganancial y que está obligado a pagarle a su exesposa un crédito por ese uso? Por los fundamentos que exponemos a continuación, resolvemos que el mero uso de la cosa común por uno solo de los comuneros no convierte ese uso en uno ilícito que justifique una acción de resarcimiento. Ahora bien, la indemnización sí procede si se infringe una reglamentación específica del uso, si al comunero afectado se le impide utilizar el bien o si hay un requerimiento de renta, por ejemplo, del

comunero lesionado por el uso incompatible con su derecho.

I

La Sra. Karla Tatiana Rivera Lamberty (peticionaria o señora Rivera Lamberty) y el Sr. José Rodríguez Amador (recurrido o señor Rodríguez Amador) estuvieron casados desde el 1998 hasta el 1 de octubre de 2008, cuando el matrimonio se disolvió mediante Sentencia de divorcio que se notificó el 6 de octubre de 2008. Tres días después, la señora Rivera Lamberty presentó una demanda mediante la cual solicitó la liquidación de la Sociedad Legal de Gananciales. Indicó que "por información y creencia, [el señor Rodríguez Amador] reside en la calle Cruz 107 Apartamento 207, Viejo San Juan, Puerto Rico 00901".[1] Alegó, entre otras cosas, que "la mayoría de los bienes gananciales han estado bajo el absoluto control de la parte demandada".[2] En particular, mencionó que tiene control sobre las cuentas de banco, la administración exclusiva de bienes de la Sociedad Legal de Gananciales, así como la participación de esta última en negocios y corporaciones.[3]

En su contestación a la demanda el señor Rodríguez Amador aclaró que en diciembre de 2008 se mudó a la propiedad de la comunidad postganancial ubicada en la

---

[1] *Demanda*, Apéndice, pág. 89.
[2] Íd.
[3] Ese mismo día, la Sra. Karla Tatiana Rivera Lamberty presentó una *Moción urgente solicitando remedios provisionales en protección de los bienes de la Sociedad Legal de Gananciales.* En síntesis, solicitó que el foro primario emitiera varias órdenes provisionales para evitar la dilapidación de los bienes de la Sociedad Legal de Gananciales. Apéndice, págs. 95-97.

Urbanización Andrea's Court debido a que la señora Rivera Lamberty abandonó la misma sin pagar la hipoteca, la luz y la cuota de mantenimiento.[4]

El foro primario realizó varias vistas en las que las partes presentaron prueba documental y testifical. Una de las controversias a dirimir era los créditos a los que tenía derecho la señora Rivera Lamberty por el alegado uso exclusivo del señor Rodríguez Amador de la residencia en la Urbanización Andrea's Court. El señor Rodríguez Amador alegó que permaneció en el inmueble para protegerlo y que la señora Rivera Lamberty abandonó voluntariamente la propiedad, nunca reclamó su uso y no aportó a los pagos de la hipoteca ni mantenimiento. Sostuvo que no era viable vender la propiedad porque valía menos de lo adeudado y tampoco era conveniente rentarla por una cantidad inferior al pago mensual de la hipoteca. Según el señor Rodríguez Amador, si la señora Rivera Lamberty tenía algún derecho, este sería a partir de junio de 2015, cuando reclamó el crédito por primera vez.

El Tribunal de Primera Instancia declaró disuelta la comunidad postganancial. Sobre la propiedad en la Urbanización Andrea's Court, el foro primario dio entera credibilidad al testimonio del señor Rodríguez Amador. Señaló que no podía concluir "que el [señor] Rodríguez Amador ocupó la vivienda de manera exclusiva y mucho menos

---

[4] *Contestación a la demanda*, Apéndice, pág. 122.

que actuó en contra del patrimonio comunitario".[5] Basándose en la Sentencia que se emitió en Meléndez v. Maldonado, 175 DPR 1007 (2009), y en la Opinión de conformidad de la Juez Asociada Rodríguez Rodríguez, el foro de instancia resolvió que el crédito en concepto de rentas debía computarse desde que la señora Rivera Lamberty lo reclamó expresamente en junio de 2015 y no desde que el señor Rodríguez Amador se mudó a la residencia ganancial.

Para computar ese crédito, el foro primario estableció una renta promedio de $1,900 para los trece meses -de junio de 2015 a julio de 2016- que el señor Rodríguez Amador usó exclusivamente la propiedad. Así, estimó que la señora Rivera Lamberty tenía derecho a un crédito de $12,350.[6] Además, el Tribunal estableció que la señora Rivera Lamberty tenía derecho a un crédito de $24,918.30, pues el señor Rodríguez Amador se benefició exclusivamente de un crédito contributivo de $49,836.60. Sumados ambos créditos, la señora Rivera Lamberty tenía un total de $37,268.30 en créditos por la propiedad en la Urbanización Andrea's Court.

El foro de instancia determinó además que el señor Rodríguez Amador pagó $265,630.67 en gastos de mantenimiento y de préstamo hipotecario desde octubre de 2008 a junio de 2016. Como el señor Rodríguez Amador costeó esas deudas con dinero privativo, el Tribunal

---

[5] Sentencia del Tribunal de Primera Instancia, Apéndice, pág. 73.
[6] $1,900 multiplicado por trece es $24,700. Esa cantidad dividida entre los dos miembros de la comunidad postganancial equivale a $12,350.

reconoció un crédito a su favor de $132,815.33, es decir, la mitad de lo pagado.

El Tribunal de Primera Instancia también adjudicó otras controversias, entre ellas los créditos que reclamó la señora Rivera Lamberty con relación a: (1) los bienes muebles de la residencia en la Urbanización Andrea's Court; (2) un apartamento en Bayside Cove; (3) una propiedad ganancial ubicada en Vista Real en Fajardo; y (4) las corporaciones People's Marine, MSL Liquor Store y Villas del Paraíso.

Finalmente, el foro primario determinó que los activos comunitarios sumaban $137,029.34 y el único pasivo era la hipoteca que gravaba el inmueble en Andrea's Court. A su vez, atendidas todas las reclamaciones, reconoció a la señora Rivera Lamberty un crédito de $163,002.17 y al señor Rodríguez Amador un crédito de $418,491.69 sobre la totalidad de los bienes, lo cual implicó que este último tuvo un crédito neto de $255,489.52. Por consiguiente, el foro primario adjudicó a su favor el inmueble en Andrea's Court. Además, ordenó que una deuda con el Centro de Recaudación de Ingresos Municipales (CRIM) se pagara con el dinero consignado en el tribunal y que el sobrante, si alguno, se abonara al crédito del señor Rodríguez Amador.

Inconforme, el 19 de agosto de 2016 la señora Rivera Lamberty recurrió ante el foro apelativo intermedio mediante un recurso de apelación. Reclamó tener un crédito a su favor por la renta que el señor Rodríguez Amador le

adeudaba, a partir de la fecha del divorcio el 1 de octubre de 2008, por el tiempo en que se benefició exclusivamente de la propiedad. Además, impugnó otras determinaciones del foro primario sobre los créditos concedidos a ambas partes.

Por su parte, el 16 de septiembre de 2016 el señor Rodríguez Amador presentó un *Alegato en Oposición*. Alegó que la peticionaria incumplió con la Regla 19 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXI-B, sobre la reproducción de la prueba oral. Por lo tanto, adujo que la señora Rivera Lamberty no puso en posición al Tribunal de Apelaciones de evaluar la credibilidad que otorgó el foro primario a los testimonios presentados. Sobre la controversia en los méritos, este reiteró los argumentos que presentó en el Tribunal de Primera Instancia.

Posteriormente, el 18 de octubre de 2016 la señora Rivera Lamberty solicitó "un término de 30 días para obtener la regrabación y transcripción estipulada de la prueba desfilada ante el TPI".[7] Alegó que fue una omisión involuntaria producto de una situación de salud del hijo de su representante legal. En su oposición, el señor Rodríguez Amador resaltó que la peticionaria presentó su solicitud un mes, cuatro semanas y un día luego de que presentó el recurso de apelación. Ello, a pesar de que la Regla 19(B) del Reglamento del Tribunal de Apelaciones

---

[7] *Moción en Solicitud de Regrabación*, Apéndice, pág. 1544.

establece que "[l]a parte apelante deberá acreditar dentro del término de diez (10) días siguientes a la presentación de la apelación, que el método de reproducción de la prueba oral que utilizará es el que propicia la más rápida dilucidación del caso".[8]

El 7 de noviembre de 2016 el Tribunal de Apelaciones notificó una Sentencia en la que confirmó al Tribunal de Primera Instancia, salvo por corregir un error del foro primario en la suma de los créditos que le corresponden a cada una de las partes. Sobre la controversia de los créditos por el alegado uso exclusivo, el foro apelativo resolvió que el derecho de la señora Rivera Lamberty a recibir el pago de la renta comenzó a partir de junio de 2015, fecha en que solicitó el crédito por primera vez. Por otro lado, resaltó que la peticionaria incumplió con la Regla 19 del Reglamento del Tribunal de Apelaciones al no presentar una transcripción sobre la prueba oral que se presentó en el foro primario. Como la peticionaria se limitó a hacer meras alegaciones y no presentó la reproducción de la prueba oral, el foro apelativo intermedio evaluó cada uno de los señalamientos de error de la peticionaria a la luz de las determinaciones de hechos y la credibilidad conferida por el foro primario.

Luego de que su solicitud de reconsideración fuese rechazada, la señora Rivera Lamberty presentó un recurso

---

[8] *Oposición a Solicitud sobre Regrabación de los Procedimientos*, Apéndice, pág. 1548.

de *certiorari* ante este Tribunal. Planteó los señalamientos de errores siguientes:

> PRIMER ERROR: Erró el Tribunal de Apelaciones al denegar la moción de la Peticionaria solicitando la reproducción de la prueba y resolver la apelación en los méritos sin la transcripción de la prueba, lo que constituyó, de facto, una desestimación, sin seguir la normativa jurisprudencial de sanciones progresivas y/o advertencias a la representación legal antes de privar a una parte de su derecho apelativo.
>
> SEGUNDO ERROR: Erró el Tribunal de Apelaciones al limitar el reclamo de la Peticionaria de renta sobre la propiedad comunal de Andrea's Court a partir de junio de 2015.
>
> TERCER ERROR: Erró el Tribunal de Apelaciones al considerar de forma incompleta el recurso, omitir evaluar la diversa prueba documental y por lo tanto adjudicar erróneamente diversas controversias, tales como confirmar la determinación del TPI de que el Recurrido no era accionista de People's Marine a pesar de la prueba documental en contrario y que el propio Recurrido lo aceptó en la contestación de la demanda; al igual que otras controversias.

Tras evaluar los argumentos, expedimos el recurso. Con el beneficio de la comparecencia de ambas partes, resolvemos.

II

A. Reproducción de la prueba oral

La Regla 19(A) del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, dispone que cuando una parte apelante en un caso civil señale un error relacionado con la suficiencia o la apreciación errónea de la prueba testifical someterá una transcripción, una exposición estipulada o una exposición narrativa. Su importancia radica en que si la parte apelante no

reproduce la prueba oral el tribunal apelativo no podrá cumplir cabalmente su función revisora. Álvarez v. Rivera, 165 DPR 1, 13 (2005). Esto, pues, sin la reproducción de la prueba oral los tribunales apelativos no podrán evaluar si las determinaciones de hechos del juzgador se basaron en pasión, prejuicio, parcialidad o error manifiesto. Véase Santiago Montañez v. Fresenius Medical, 195 DPR 476 (2016); véase también la Regla 42.2 de Procedimiento Civil, 32 LPRA Ap. V.

Además de requerir la reproducción de la prueba oral, el Reglamento del Tribunal de Apelaciones también regula cómo debe solicitarse. La Regla 19(B) exige que la parte apelante "acredit[e] dentro del término de diez (10) días siguientes a la presentación de la apelación, que el método de reproducción de la prueba oral que utilizará es el que propicia la más rápida dilucidación del caso, pudiendo el tribunal determinar el método que alcance esos propósitos". 4 LPRA Ap. XXII-B. Además, la Regla 20 dispone que cuando la prueba se reproduzca por transcripción se seguirá el proceso de la Regla 76, mientras que cuando se utilice la exposición estipulada o narrativa se hará conforme con la Regla 76.1. 4 LPRA Ap. XXII-B. Sobre el proceso de transcripción, conviene destacar que la Regla 76 también requiere que la parte apelante notifique al Tribunal de Apelaciones –en un término de diez días desde que se presentó el recurso– que se propone transcribir la prueba oral. Deberá, a su vez,

exponer por qué la transcripción es indispensable e identificar las porciones pertinentes del récord ante el Tribunal de Primera Instancia cuya transcripción interesa, incluso la fecha de los testimonios y los nombres de los testigos. 4 LPRA Ap. XXII-B.

Después de presentar la reproducción de la prueba oral la parte apelante tiene la facultad de presentar un alegato suplementario con la intención de indicar las porciones de la exposición o de la transcripción que sean relevantes a sus señalamientos de error. 4 LPRA Ap. XXII-B. Ahora bien, el término para presentarlo es treinta días desde que presentó la transcripción o la exposición estipulada o narrativa de la prueba. Además, si la parte desea presentar un alegato suplementario deberá notificarlo cuando presente la reproducción de la prueba oral.

Las disposiciones reglamentarias discutidas se deben observar rigurosamente. Los abogados tienen la obligación de cumplir fielmente con el trámite establecido en las leyes y en los reglamentos aplicables, ya que "[n]o puede quedar al arbitrio de los abogados decidir qué disposiciones reglamentarias se deben acatar y cuándo". Hernández Maldonado v. Taco Maker, 181 DPR 281, 290 (2011). Esta exigencia es necesaria para que los tribunales apelativos estén en posición de decidir correctamente los casos, contando con un expediente

completo y claro de la controversia que tienen ante sí. Soto Pino v. Uno Radio Group, 189 DPR 84, 90 (2013).

B. Discusión del primer y tercer señalamiento de error

La señora Rivera Lamberty plantea que el foro intermedio incurrió en una desestimación *de facto* cuando denegó su moción solicitando la reproducción de la prueba oral. Nos pide que autoricemos la transcripción de la prueba oral y que devolvamos el caso al Tribunal de Apelaciones para que considere nuevamente los méritos del caso, con el beneficio de la transcripción de la prueba. Por su parte, el señor Rodríguez Amador aclara que no se trata de una desestimación *de facto* porque el foro apelativo intermedio atendió en sus méritos las controversias planteadas. Ahora bien, como la señora Rivera Lamberty incumplió con el término reglamentario para solicitar la reproducción de la prueba oral, el Tribunal de Apelaciones aplicó correctamente la norma de deferencia judicial sobre la apreciación de los hechos que realizó el Tribunal de Primera Instancia. El señor Rodríguez Amador tiene la razón.

Según explicamos, la Regla 19(A) del Reglamento del Tribunal de Apelaciones, supra, dispone que un apelante en un caso civil deberá someter una reproducción de la prueba oral cuando señale un error relacionado con la suficiencia o la apreciación errónea de la prueba testifical. De ser así, la parte apelante deberá acreditar, en el término de diez días siguientes a la presentación de la apelación,

que el método de reproducción de la prueba oral que eligió propicia la más rápida dilucidación del caso. Regla 19(B) del Reglamento del Tribunal de Apelaciones, supra. Por otro lado, cuando el método seleccionado sea una transcripción, la parte apelante debe notificar, en un término de diez días de presentado el recurso, que se propone transcribir la prueba oral e identificar las porciones pertinentes del récord cuya transcripción interesa. Regla 76 del Reglamento del Tribunal de Apelaciones, supra.

La señora Rivera Lamberty no observó estas disposiciones reglamentarias. Desde el **19 de agosto de 2016**, fecha en que presentó el recurso de apelación, la peticionaria contaba con un término de diez días para indicar cómo reproduciría la prueba oral y, de elegir la transcripción, indicar por qué era indispensable y cuáles eran las porciones pertinentes del récord. No obstante, no fue hasta el **18 de octubre de 2016**, luego de que fuera señalado por el señor Rodríguez Amador, que la señora Rivera Lamberty solicitó un término de treinta días para obtener la regrabación y producir una transcripción estipulada.

La señora Rivera Lamberty presentó como justa causa para su incumplimiento la situación de salud del hijo de su representante legal. No obstante, en Lugo v. Suárez, 165 DPR 729, 740 (2005), resolvimos que "[l]a enfermedad de un abogado o de una persona de su círculo familiar

inmediato que dependa de él es una circunstancia especial, no planificada, que constituye una justa causa, **siempre que se acredite fehacientemente su ocurrencia**" (Énfasis suplido). En cambio, en este caso la representante legal de la peticionaria se limitó a expresar dos meses más tarde que tuvo una emergencia de salud, sin indicar cuál fue o acreditar fehacientemente su ocurrencia. Por lo tanto, no hubo justa causa para incumplir con los términos reglamentarios sobre reproducción de la prueba oral.

Por otro lado, cabe destacar que en este caso el Tribunal de Apelaciones no desestimó la apelación, sino que atendió los señalamientos de error en los méritos. Para ello, concedió deferencia a las determinaciones de hecho del Tribunal de Primera Instancia al momento de analizar si las determinaciones de derecho se basaron en la prueba documental y testifical que se presentó. Por consiguiente, ante el incumplimiento sin justa causa de la señora Rivera Lamberty con las disposiciones reglamentarias, actuó correctamente el Tribunal de Apelaciones al denegar la reproducción de la prueba oral y atender los señalamientos de error sin su beneficio.

Resuelto lo anterior, procedemos a discutir el derecho aplicable al señalamiento de error restante.

III

A. Comunidad Postganancial

Según el Código Civil, a falta de capitulaciones matrimoniales, la sociedad legal de gananciales será el

régimen económico aplicable a los matrimonios contraídos en Puerto Rico. Art. 1267 del Código Civil, 31 LPRA sec. 3551. Bajo este régimen se presumen gananciales todos los bienes del matrimonio. Art. 1307 del Código Civil, 31 LPRA sec. 3551. Además, ambos cónyuges son codueños y administradores de la totalidad del patrimonio matrimonial. Montalván v. Rodríguez, 161 DPR 411, 420 (2004).

Esta sociedad de gananciales se extingue cuando el matrimonio se disuelve o se declara nulo. Art. 1315 del Código Civil, 31 LPRA sec. 3681. En ese instante nace una comunidad de bienes, también conocida como comunidad postganancial, compuesta por los bienes que le pertenecían a la sociedad de gananciales. Art. 1294 del Código Civil, 31 LPRA sec. 3621; Montalván v. Rodríguez, supra, pág. 421. En la comunidad postganancial cada ex cónyuge posee una cuota abstracta e independiente sobre la masa ganancial. Pagán Rodríguez v. Registradora, 177 DPR 522, 532 (2009). Además, ambos pueden tanto administrar la comunidad como solicitar su división. Montalván v. Rodríguez, supra, pág. 421. Una vez uno de los ex cónyuges pide la división, se liquidan los bienes que le pertenecían a la sociedad legal de gananciales y deja de existir la comunidad postganancial. Residentes Sagrado Corazón v. Arsuaga, 160 DPR 289, 305 (2003).

B. Crédito por uso ilícito de un bien común

Aunque tiene sus características propias, la comunidad postganancial está sujeta a las normas del Código Civil sobre comunidad de bienes. BL Investment Inc. v. Registrador, 181 DPR 5, 24 (2011). En lo pertinente, el Artículo 328 del Código Civil dispone que "[c]ada partícipe podrá servirse de las cosas comunes, siempre que disponga de ellas conforme a su destino y de manera que no perjudique el interés de la comunidad, ni impida a los copartícipes utilizarlas según su derecho". 31 LPRA sec. 1273. En otras palabras, mientras dure la comunidad postganancial cada ex cónyuge puede usar la cosa común, aunque ninguno puede tener control total sobre sus bienes. Betancourt González v. Pastrana Santiago, 200 DPR 169, 180 (2018).

En De la Fuente v. Antonio Roig Sucrs., S. en C., 82 DPR 514, 521 (1961), aclaramos que la frase "conforme a su destino" implica que los comuneros solo podrán utilizar la cosa para aquellos "usos fijados por la comunidad o admitidos generalmente para la cosa, ya fueren por su naturaleza o por 'el uso del tráfico'". Concluimos que el Artículo 328 impide a un comunero utilizar la cosa común "para su particular y exclusivo beneficio y sin pagar una adecuada compensación a la comunidad". Íd., pág. 534. Incluso, destacamos que esta prohibición es "uno de los principios rectores de un régimen pacífico y justo de la comunidad". Íd.

En el contexto de una comunidad postganancial, en Soto López v. Colón, 143 DPR 282, 289 (1997), expresamos que "durante la existencia de la comunidad de bienes ninguno de los ex cónyuges puede tener el monopolio de ella". Por lo tanto, como en ese caso el exesposo tuvo el control absoluto de los bienes, resolvimos que la exesposa tenía un derecho como comunera "a que su ex cónyuge le pague una suma líquida especifica periódica". Íd., págs. 291-292. De esta manera garantizamos el disfrute de los bienes comunes de la comunera que fue excluida de su uso.

Más relevante aún, en Díaz v. Aguayo, 162 DPR 801 (2004), atendimos el caso de la Sra. Lilliam Díaz Lizardi y el Sr. Juan José Aguayo Leal, quienes siendo novios compraron una residencia en la cual cada uno tendría una participación del 50%. Aunque compraron muebles y accesorios, nunca se mudaron a la propiedad. El noviazgo finalizó en noviembre de 1998 y, un mes después, el señor Aguayo Leal comenzó a hacer el pago mensual de la hipoteca en su totalidad. Además, en diciembre de 1999, este comenzó a vivir ahí con su esposa y retuvo todo el mobiliario que adquirió con la señora Díaz Lizardi.

En noviembre del 2000 la señora Díaz Lizardi presentó una demanda sobre división de comunidad de bienes y cobro de dinero. El Tribunal de Primera Instancia determinó, entre otras cosas, que el señor Aguayo Leal tenía un crédito por la mitad de los pagos mensuales de hipoteca que realizó desde diciembre de 1998. Inconforme, la señora

Díaz Lizardi acudió ante el Tribunal de Apelaciones y argumentó que el foro primario erró al conceder ese crédito, ya que le privaba de su derecho a tener una compensación adecuada por el tiempo en que el señor Aguayo Leal hizo uso exclusivo de los bienes de la comunidad. No obstante, el foro apelativo intermedio confirmó al foro de instancia, lo que provocó que la señora Díaz Lizardi recurriera ante este Tribunal.

Según la Opinión del Tribunal la controversia a resolver era "el efecto que tiene el uso exclusivo de los bienes muebles e inmuebles comunitarios por uno de los copropietarios, en el cómputo final del crédito que le corresponde a cada uno al momento de la liquidación". Íd., pág. 808. Luego de citar el Artículo 328 del Código Civil señalamos que el derecho de uso de un comunero tiene tres restricciones básicas: (1) debe usar la cosa conforme a su destino; (2) no debe perjudicar el interés de la comunidad, y (3) no debe impedir el uso de los otros copartícipes conforme a su derecho. Íd., pág. 809. Además, destacamos que ya habíamos analizado esa última limitación en los casos de De la Fuente v. Antonio Roig Sucrs., S. en C., supra, y Soto López v. Colón, supra.

Luego de exponer el derecho aplicable, afirmamos que lo resuelto en estos dos casos, esto es, "que uno de los comuneros no puede usar la cosa común de manera exclusiva y en su propio beneficio sin pagar la compensación correspondiente a los demás", era la norma aplicable a la

controversia. <u>Díaz v. Aguayo</u>, supra, pág. 813. Por otro lado, por primera vez establecimos que "el uso exclusivo del bien común por uno sólo de los comuneros sin resarcir al otro es contrario a principios elementales de derecho, basados en la equidad, que no permiten el enriquecimiento injusto". <u>Íd.</u>, pág. 814.

Al aplicar el derecho a los hechos, concluimos que el señor Aguayo Leal utilizó los bienes comunales para su beneficio exclusivo sin el consentimiento de la señora Díaz Lizardi. Por lo tanto, rechazamos los argumentos del señor Aguayo Leal, entre ellos que la señora Díaz Lizardi no mostró interés en vivir en la casa, que consintió a su uso exclusivo y que no fue diligente al no interponer una demanda de interdicto para impedirlo.

En consecuencia, resolvimos que desde diciembre de 1999 —cuando el señor Aguayo Leal se mudó a la residencia luego de casarse— la señora Díaz Lizardi tenía derecho a un crédito por privación de uso del bien inmueble.[9] Determinamos que ese crédito debía computarse utilizando como base el canon de arrendamiento de una propiedad similar para esas fechas. Asimismo, rechazamos que el señor Aguayo Leal tuviera derecho a un crédito por el pago de la hipoteca durante este periodo, pues "permitir que el señor Aguayo reciba un crédito por la mitad de los pagos

---

[9] Por otro lado, establecimos que por los meses de diciembre de 1998 hasta noviembre de 1999 la señora Díaz Lizardi no tenía derecho a un crédito, pues ninguno de los dos comuneros ocupó la vivienda durante ese periodo. En cambio, reconocimos que el señor Aguayo Leal tenía un crédito por la mitad de los pagos hipotecarios que realizó durante este periodo.

de la hipoteca, cuando utilizó el bien para su beneficio exclusivo, a todas luces presenta una situación de enriquecimiento injusto". Íd., pág. 816.[10]

Posteriormente, en Meléndez v. Maldonado, 175 DPR 1007 (2009) (Sentencia), nos enfrentamos a otra solicitud de renta por parte de un cónyuge por el uso exclusivo de una propiedad. En este, la Sra. Ida Nicza Meléndez Berríos permaneció viviendo en la residencia con los tres hijos del matrimonio tras divorciarse del Sr. Wilfredo Maldonado Dieppa.

Varios años después, la señora Meléndez Berríos presentó una acción de división de comunidad de bienes. El señor Maldonado Dieppa contestó la demanda y presentó una reconvención donde solicitó una renta por el uso exclusivo de la señora Meléndez Berríos de la residencia conyugal. Solicitó que los cánones fueran satisfechos desde el 2 de junio de 2000, fecha en que la menor de los dos hijos del matrimonio se emancipó por mayoridad. Luego modificó su postura y alegó que los cánones debían resarcirse desde el 24 de abril de 2002, fecha en que solicitó por primera vez la división de la comunidad postganancial.

_____

[10] El entonces Juez Asociado Hernández Denton emitió una Opinión de conformidad donde expresó que "el mero hecho del uso exclusivo por uno de los comuneros no es determinante al resolver si éste 'impidió' a los demás copartícipes el ejercicio de igual derecho". Díaz v. Aguayo, 162 DPR 801, 821 (2004). En cambio, para el Juez Asociado lo determinante fue que el señor Aguayo Leal trajo a un tercero, a su esposa, a participar del uso y disfrute del inmueble. Por lo tanto, si el señor Aguayo Leal se hubiese mudado solo "no hubiese necesariamente infringido el Art. 328 del Código Civil porque estaría legítimamente haciendo efectivo su derecho de disfrutar la cosa común conforme a su destino, sin perjudicar los intereses de la comunidad y sin impedir que la señora Díaz Lizardi haga lo propio". Íd.

Por su parte, la señora Meléndez Berríos arguyó que no estaba obligada a pagar renta alguna, pues todo comunero tiene derecho al uso de la propiedad en común. Indicó que no le impidió al señor Maldonado Dieppa usar la propiedad sino que este se autoexcluyó del disfrute cuando contrajo nuevas nupcias. En la alternativa, alegó que la renta debía pagarse desde que el señor Maldonado Dieppa presentó su reconvención y realizó un requerimiento formal de pago. El Tribunal de Primera Instancia acogió la postura de la señora Meléndez Berríos y resolvió que el crédito debía satisfacerse desde que se solicitó formalmente en la reconvención. El señor Maldonado Dieppa recurrió ante el Tribunal de Apelaciones, pero ese foro confirmó al foro primario pues entendió que, distinto a Díaz v. Aguayo, supra, en este caso la señora Meléndez Berríos permaneció soltera y no excluyó ni privó al señor Maldonado Dieppa de usar la residencia.

Por estar igualmente dividido, este Tribunal emitió una Sentencia mediante la cual confirmó al Tribunal de Apelaciones. Según una Opinión de Conformidad que se emitió, los foros recurridos resolvieron correctamente la controversia debido a que el uso del bien común por uno solo de los comuneros no constituye un uso ilícito de por sí. Se expuso que:

> [e]n ausencia de la violación de un pacto o una reglamentación específica de uso establecido por los comuneros, aquel que entienda que el uso exclusivo de la cosa por otro comunero es incompatible con su propio derecho, tendrá que requerir al otro el uso de la cosa o del pago de

la renta o del canon por el uso exclusivo y a partir de ese requerimiento nacerá la obligación de resarcir. Meléndez v. Maldonado, 175 DPR 1018 (2009) (J. Rodríguez Rodríguez, Op. de Conformidad).[11]

En consecuencia, el señor Maldonado Dieppa tenía un derecho a rentas desde que hizo el requerimiento formal y no desde que la señora Meléndez Berríos se mudó a la residencia.

Finalmente, en Molina González v. Álvarez Gerena, 2019 TSPR 191, 203 DPR __ (2019), aplicamos esa norma al resolver que -en ausencia de un acto obstativo- un comunero en una comunidad hereditaria solo tenía que pagar una renta por uso exclusivo de una propiedad comunal a otra comunera a partir del momento en que esta reclamó el pago de esa renta. En ese caso, de manera unánime, este Tribunal aclaró que "para tener derecho al pago de una compensación, el comunero que alega haber sido excluido de su participación en la comunidad deberá identificar[…] un acto obstativo que suponga tal exclusión o un requerimiento afirmativo del comunero que alega ser excluido". Íd., pág. 10. Debido a que el comunero demandado no impidió a la comunera excluida usar la propiedad comunal ni esta solicitó usarla antes de reclamar el pago de rentas por el presunto uso exclusivo, el periodo por el cual el primero le debía rentas a la segunda no podía computarse a partir del momento en que

---

[11] Asimismo, en la Opinión de Conformidad se distinguió el caso de lo resuelto en Díaz v. Aguayo, supra, pues en ese último caso hubo una clara exclusión de la señora Díaz Lizardi cuando el señor Aguayo Leal se mudó a la propiedad con su esposa.

este se mudó a la propiedad, sino desde que la comunera excluida requirió las rentas por primera vez. En ese caso, ello sucedió con la presentación de la demanda, debido a que fue entonces que la comunera excluida solicitó por primera vez el pago de rentas por uso exclusivo. Íd., pág. 12 ("Al momento en que la señora Molina González interpone una demanda solicitando la división de esa comunidad **y el pago de las rentas**, en el año 2005, es que [e]sta tiene derecho a una compensación en concepto del uso y disfrute exclusivo del señor Álvarez Gerena del bien común") (Énfasis suplido).

C. Discusión del segundo señalamiento de error

La señora Rivera Lamberty alega que erró el Tribunal de Apelaciones al limitar su reclamo de renta sobre la propiedad comunal de Andrea's Court a partir de junio de 2015.[12] En su alegato solicita que apliquemos la norma de Díaz v. Aguayo, supra, y resolvamos que el derecho a recibir la renta surgió cuando el señor Rodríguez Amador comenzó a utilizar la residencia para sí. No obstante, aun en caso de aplicar lo expuesto en la Opinión de Conformidad que se emitió en Meléndez v. Maldonado, supra, la señora Rivera Lamberty entiende que "la reclamación judicial constituye suficiente 'requerimiento de pago' pues está rechazando expresamente la posesión exclusiva de

---

[12] Este Tribunal se encuentra en posición de revisar la determinación de los foros recurridos, ya que se trata de una determinación de derecho. Es decir, nos corresponde resolver si las rentas por uso ilícito nacen cuando el comunero se muda solo a la propiedad o si se requiere algún requerimiento o manifestación del otro comunero que no consiente ese uso.

los bienes por el otro ex cónyuge".[13] De modo que el crédito por renta debe computarse a partir de octubre de 2008, cuando presentó su reclamación judicial de división de bienes.

En cambio, el señor Rodríguez Amador plantea que residir en la propiedad para evitar su deterioro no constituyó una exclusión de la señora Rivera Lamberty. Además, sostiene que "se puede colegir que la peticionaria tácitamente consintió [] a que la propiedad fuese ocupada exclusivamente por el [recurrido]".[14] Por lo tanto, argumenta que el pago de la renta se debe computar desde que esta revocó expresamente el consentimiento tácito mediante el requerimiento específico del pago de renta por el uso del bien inmueble en junio de 2015.

No hay duda de que si un comunero impide o excluye a los otros comuneros en cuanto al uso de un bien común este está haciendo un uso ilícito que debe compensarse. De la Fuente v. Antonio Roig Sucrs., S. en C., supra. Ahora bien, la controversia actual se da en casos donde no se probó que el comunero impidió usar la propiedad, pero sí fue el único en usarla. En esos casos la doctrina civilista considera que **el mero uso de la cosa común por uno solo de los comuneros no supone un uso ilícito** que requiera un resarcimiento por privación de uso a los demás copropietarios. Por lo tanto, en estos casos, para que un comunero sea acreedor de un crédito será necesario que el

---

[13] *Alegato de la Parte Peticionaria*, pág. 26.
[14] *Alegato en oposición*, pág. 23.

otro comunero infrinja una reglamentación específica o que el comunero afectado requiera usar la cosa o una compensación económica por dicho uso.[15] Véase además Molina González, supra, pág. 10.

Esta norma tiene su justificación valorativa en que, según la doctrina de comunidad de bienes, todo comunero puede usar la cosa común siempre y cuando no afecte el interés de la comunidad y la use conforme con su destino. Art. 328 del Código Civil, supra. Sería absurdo interpretar que el mero uso de la cosa común está afectando el interés de la comunidad o es en contra de su destino. De ser así, los bienes de la comunidad postganancial o de cualquier otra comunidad no podrían ser usados por ninguno de los comuneros, lo cual contravendría el Artículo 328 del Código Civil, el cual dispone que "[c]ada partícipe podrá servirse de las cosas comunes". Íd. Por lo tanto, **en ausencia de prueba en contrario, se presumirá que el comunero consintió tácitamente** a que el otro comunero ocupara el bien común.

El Tribunal Supremo de España acogió esta norma al interpretar el Artículo 394 del Código Civil español, idéntico a nuestro Artículo 328. Un ejemplo es la Sentencia de 19 de febrero de 2016. S. de 19 de febrero de 2016, Núm. 533/2016. En el contexto de un bien inmueble que era usado por unas comuneras como oficinas para

---

[15] M. Miquel González, en M. Albaladejo, Comentarios al Código Civil y compilaciones forales, Madrid, Ed. Rev. Der. Privado, 1985, T. V, Vol. 2, pág. 73.

ejercer la profesión de psicología, el Tribunal expresó que si "un comunero usa la cosa común respetando los límites del artículo 394 CC, […] **los otros comuneros no pueden impedírselo por el mero hecho de que aquél la use él sólo**, o de que -teniendo, por ejemplo, todos ellos cuotas iguales-, aquél la use más que el otro u otros". Íd., pág. 8. El Tribunal Supremo de España abundó que "[e]l **mero hecho de que el referido uso de la cosa común sea el único** […], **n[o] lo convierte en un uso ilícito** que justifique una acción de resarcimiento, ni en un uso sin causa que permita fundar una acción de enriquecimiento injusto". Íd.

De ahí queda claro que el hecho de que solo un comunero use la cosa común no convierte ese uso en ilícito. Por lo tanto, según la jurisprudencia española, "a falta de acuerdo válido de reglamentación específica del uso de la cosa común, no incumbe al comunero imponerse a sí mismo el límite del que su uso 'no perjudique el interés de la comunidad'". Íd., pág. 9. Para que el uso sea ilícito y exista una acción de resarcimiento "es necesario **infringir una reglamentación específica del uso, o un requerimiento** […] del comunero lesionado por uso incompatible con su derecho". Íd. (Énfasis suplido).[16]

---

[16] Por otro lado, expertas en la materia en Puerto Rico también entienden que el uso de la cosa común por solamente uno de los comuneros no convierte ese uso en ilícito. Véase Érika Fontánez Torres & Mariana Muñiz Lara, Derechos Reales, 79 Rev. Jur. U.P.R. 471, 514 (2010). Al evaluar Meléndez v. Maldonado, supra, expresaron que coincidían en que "el hecho de que un comunero o una comunera se sirva de la cosa no implica, de por sí, que automáticamente tenga que compensar a otra u otras personas". Íd. Así, mencionaron ciertas

Adoptar la postura contraria implicaría que en una situación de hechos como la de Meléndez v. Maldonado, supra, una mujer divorciada que tenga custodia de los hijos usaría ilícitamente el bien común una vez estos advengan mayores de edad. Esto, a pesar de que tiene un derecho, como toda comunera, a usar el bien común y su ex cónyuge nunca le manifestó que no podía hacer uso de la propiedad. La Profesora Margarita E. García Cárdenas advertía tal consecuencia cuando expuso, previo a resolverse Meléndez v. Maldonado, supra, que —al utilizarse prospectivamente el caso de Díaz v. Aguayo, supra— era importante mantener en perspectiva "que en la situación de hechos el señor Aguayo Leal estaba ocupando la casa con su nueva esposa y no se trataba de una comunidad pos ganancial en la cual él se hubiera quedado en el uso de la residencia con unos hijos comunes menores de edad".[17]

Asimismo, dicha solución permitiría que un ex cónyuge que abandone el bien perteneciente a la comunidad por un tiempo indeterminado conserve un derecho a reclamar la mitad de la renta, computada desde el momento en que su ex cónyuge comenzó a residir en la propiedad común. No podemos avalar una teoría jurídica cuyo efecto sea

---

distinciones que consideraron válidas e importantes entre dicha sentencia y lo resuelto en Díaz v. Aguayo, supra. Señalaron, entre otras cosas, que en Díaz v. Aguayo, supra, se puede entender que el señor Aguayo Leal al mudarse con su nueva pareja a la propiedad no utilizó la misma conforme al destino que fijó la comunidad, es decir, el uso de la residencia por la pareja disuelta. Íd.

[17] Margarita E. García Cárdenas, La comunidad pos ganancial: Quo Vadis, 39 Rev. Jur. U.I.P.R. 717, 724 (2005).

desalentar el ejercicio diligente de derechos a expensas del comunero que ejerce legítimamente su facultad de utilizar el bien común,[18] sujeto a los límites que enumera el Art. 328 del Código Civil, _supra_. Lo anterior, máxime cuando lo único que se exige del comunero presuntamente excluido para hacer valer su derecho es que sea diligente en realizar requerimientos ante un uso que entiende es incompatible con sus derechos como comunero.

Por todo lo anterior, resolvemos que, según reconoce el Artículo 328 del Código Civil, los comuneros pueden usar el bien común —incluso de manera exclusiva— siempre y cuando no impidan su uso por parte de los demás comuneros. Ahora bien, tal uso se considera ilícito y da paso a una acción por resarcimiento si se infringe una reglamentación específica del uso, si al comunero afectado se le impide utilizar el bien o si hay un requerimiento de renta, por ejemplo, del comunero lesionado por el uso incompatible con su derecho. De esta forma se promueve que los comuneros lleguen a un acuerdo, ya sea en cuanto al uso de la propiedad o la división de la comunidad de bienes, y además que sean diligentes en el reclamo de sus derechos.

En este caso, los foros recurridos coincidieron en que el mero uso exclusivo no da derecho a un crédito. Entendieron que el derecho de la señora Rivera Lamberty a

---

[18] El resultado práctico de adoptar tal norma bien podría ser que un comunero diligente que en otro escenario se ocuparía de vivir y conservar la propiedad decida no hacerlo. Ello, en atención a la amenaza que le representaría tener que responder por la mitad de la renta ante un comunero que abandonó la propiedad y no cuestionó su uso.

recibir el pago de la renta comenzó a partir de junio de 2015, pues plantean que esta fue la fecha en que solicitó por primera vez el crédito. Están en lo correcto en cuanto a lo primero, mas no lo segundo.

En cuanto al uso de la propiedad, conviene destacar que al foro primario le mereció credibilidad lo alegado por el señor Rodríguez Amador en cuanto a las razones para permanecer residiendo en la propiedad. Es decir, que se vio forzado a utilizarla para proteger los haberes de la comunidad post ganancial ante el abandono de la propiedad por parte de la señora Rivera Lamberty. Por ello, no procede determinar que la mudanza constituyó un impedimento en lo que se refiere a la señora Rivera Lamberty y su derecho a utilizar la propiedad.[19]

En vista de lo anterior, y de que tampoco estamos ante la violación de un acuerdo entre las partes, la renta procede desde que se realizó el requerimiento. A esos efectos, precisamos que, para activar la responsabilidad del ex cónyuge residente a pagar un crédito por privación de uso, el requerimiento del otro ex cónyuge debe exhibir un grado mínimo de especificidad. En particular, bastará que el requerimiento de uso: (1) identifique el bien comunal objeto del requerimiento y (2) sea dirigido a la persona del otro ex cónyuge comunero. La efectividad de tal requerimiento no depende de requisito de forma alguno;

---

[19] Distinto sería si se hubiera determinado que el señor Rodríguez Amador le exigió a la señora Rivera Lamberty que se fuera de la propiedad, ya que ello constituiría un impedimento en cuanto al uso del bien.

cuándo y cómo ocurrió el primer requerimiento de uso es un asunto de prueba a dirimirse por los tribunales de acorde a las normas de derecho probatorio.

Surge del expediente que el 30 de noviembre de 2012 fue la primera vez que la señora Rivera Lamberty solicitó expresamente el crédito mediante una *Oposición a Solicitud Urgente presentada por la Demandada y al Retiro de Fondos Depositados en el Tribunal* que presentó.[20] En particular, expresó lo siguiente: "La [peticionaria], en este caso, tiene un crédito en contra del [recurrido] por el tiempo en que este ha utilizado exclusivamente la propiedad que ubica en la Urbanización Andrea's Court sin resarcir de forma alguna a la [peticionaria] por este perjuicio".[21]

Procede, pues, que el Tribunal de Primera Instancia determine el pago de la renta a partir del 30 de noviembre de 2012, pues desde ese momento la señora Rivera Lamberty requirió ese pago. <u>Molina González</u>, supra.

IV

Por los fundamentos que anteceden, se revoca la Sentencia del Tribunal de Apelaciones y se devuelve el caso al Tribunal de Primera Instancia para que continúe

---

[20] A pesar de que la señora Rivera Lamberty alega que el crédito por renta debe computarse a partir de octubre de 2008, cuando presentó su reclamación judicial de división de bienes, entendemos que no tiene razón. Lo anterior, debido a que cuando presentó la demanda ni siquiera tenía conocimiento de que el señor Rodríguez Amador estuviera residiendo en la propiedad. En particular, la señora Rivera Lamberty indicó que este residía en la calle Cruz 107, Apartamento 207, Viejo San Juan, PR 00901. *Demanda*, Apéndice, pág. 89. Por lo tanto, la demanda de liquidación de bienes no se puede considerar un requerimiento que conllevara el resarcimiento solicitado.
[21] *Oposición a Solicitud Urgente presentada por la Demandada y al Retiro de Fondos Depositados en el Tribunal*, Apéndice, pág. 702.

con los procedimientos de forma compatible con lo aquí resuelto.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. El Juez Asociado señor Colón Pérez emitió un Voto particular disidente. El Juez Asociado señor Martínez Torres disiente y emite la siguiente expresión, a la cual se unen los Jueces Asociados señores Kolthoff Caraballo y Rivera García:

> "Disentimos del curso de acción seguido por este Tribunal, pues es contrario a lo que recientemente resolvimos en Molina González v. Álvarez Gerena, 2019 TSPR 191, 203 DPR _ (2019). En aquella ocasión concluimos que para determinar si un comunero ha sido excluido del uso de un bien común hay que hacer un examen de los hechos particulares de cada caso. Íd., pág. 18. Asimismo, indicamos que en los casos en que se alegue la exclusión por parte de uno de los excónyuges del uso y disfrute del bien de la comunidad post ganancial "**deberá identificarse un acto obstativo o un requerimiento afirmativo del comunero que suponga tal exclusión**". Íd., pág. 19. Es a partir de cualquiera de eso dos momentos que el cónyuge que queda excluido de usar la propiedad ganancial tiene derecho a recobrar un crédito por el uso exclusivo del bien que hace el otro cónyuge. En este caso, contrario a lo que indica la mayoría de esta Curia, el acto obstativo ocurrió desde el momento en que el Sr. José Alberto Rodríguez Amador, tras la separación, decidió quedarse a vivir en la propiedad ganancial en el 2008, pues por la naturaleza de la situación, la Sra. Karla Tatiana Rivera Lamberty estaba impedida de vivir en la propiedad ganancial mientras el señor Rodríguez Amador viva en ella. Véase, expresión disidente del Juez Asociado Martínez Torres en Meléndez Berríos v. Maldonado Dieppa, 175 DPR 1007, 1008 (2009). Ante esto, la señora Rivera Lamberty tiene derecho a que se le pague el crédito por el uso exclusivo del bien ganancial que ostenta el señor Rodríguez Amador desde el momento en que se separaron y él se quedó viviendo en la propiedad ganancial. Resolver lo contrario significaría ir contra lo que hemos

afirmado en controversias pasadas, tan reciente como hace apenas un año".

José Ignacio Campos Pérez
Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Karla Tatiana Rivera Lamberty

    Peticionaria                CC-2017-0006        *Certiorari*

      v.

José Alberto Rodríguez Amador

    Recurrido

Voto Particular Disidente emitido por el Juez Asociado señor COLÓN PÉREZ.

En San Juan, Puerto Rico a 16 de septiembre de 2020.

Disentimos del curso de acción seguido por una mayoría de este Tribunal en el presente caso, ello por entender que -- contrario a lo que erróneamente se concluye en la *Sentencia* que hoy emite esta Curia -- la señora Karla Tatiana Rivera Lamberty, la aquí peticionaria, tiene derecho a un crédito por el tiempo que su excónyuge, el señor José Alberto Rodríguez Amador, utilizó de manera exclusiva cierto inmueble perteneciente a la comunidad postganancial, entiéndase desde que éste ocupo la referida propiedad. Veamos.

I.

Los hechos medulares que dan margen al presente litigio se recogen con particular precisión en la

*Sentencia* que hoy emite este Tribunal, razón por la cual hemos decidido adoptar los mismos por referencia. En síntesis, el caso de marras versa sobre la comunidad de bienes postganancial habida entre la señora Karla Tatiana Rivera Lamberty (en adelante, "señora Rivera Lamberty") y el señor José Alberto Rodríguez Amador (en adelante, "señor Rodríguez Amador") la cual está compuesta, entre otros, de cierto inmueble ubicado en la Urbanización Andrea's Court. El referido inmueble fue ocupado -- allá para diciembre de 2008 -- por el señor Rodríguez Amador luego de disolverse el vínculo matrimonial habido entre éste y la señora Rivera Lamberty. Debido a lo anterior, esta última reclama un crédito por el tiempo que su excónyuge utilizó dicha propiedad ya que, a su juicio, se le impidió el uso y disfrute del mismo. Le asiste la razón. Nos explicamos

II.

Como es sabido, aunque el divorcio de dos personas unidas en matrimonio implica la terminación del régimen de la sociedad legal de bienes gananciales habido entre ambos, la liquidación del capital común entre excónyuges no siempre ocurre simultáneamente con la disolución del matrimonio. *Betancourt González v. Pastrana Santiago*, 200 DPR 169, 178 (2018). En esas circunstancias en las que la liquidación del capital común no ocurre de manera simultánea con el divorcio, sobreviene un periodo de

tiempo en que se mezclan y confunden provisionalmente los bienes de los excónyuges, hasta que se liquida finalmente la comunidad de bienes postganancial que se crea entre ellos una vez ocurra el divorcio. *Betancourt González v. Pastrana Santiago, supra; BL Investment Inc. v. registrador*, 181 DPR 5 (2011); *Muñiz Noriega v. Muñoz Bonet*, 177 DPR 967 (2018).

Sobre el particular, esta Curia ha señalado que, durante la vigencia de la comunidad de bienes postganancial, ninguno de los excónyuges puede tener control total sobre ella. *Betancourt González v. Pastrana Santiago, supra*. Lo anterior, conforme a lo dispuesto en el Art. 328 del Código Civil, 31 LPRA sec. 1273, el cual claramente establece que "[c]ada partícipe podrá servirse de las cosas comunes, siempre que disponga de ellas conforme a su destino y de manera que no perjudique el interés de la comunidad, ni impida a los copartícipes utilizarlas según su derecho". Véase, *Betancourt González v. Pastrana Santiago, supra*.

En esa dirección, hemos sentenciado que usar las cosas comunes de manera que uno de los comuneros posea la totalidad de ellas excluyendo a los demás, se considera un perjuicio del interés de la comunidad. *Díaz v. Aguayo*, 162 DPR 801 (2004); *Soto López v. Colón*, 143 DPR 282 (1997). Ello no debe ser permitido.

Así pues, si uno de los excónyuges mantiene el control y uso de los bienes de la comunidad, el otro excónyuge tiene un derecho superior como comunero a que, entre otras cosas, se le pague una suma líquida específica. *Soto López v. Colón*, *supra*, págs. 291-92. Ello, pues, no resarcir al cónyuge que se ve impedido del uso de determinado bien es contrario a principios elementales de derecho -- fundamentados en la equidad -- que no permiten el enriquecimiento injusto. *Díaz v. Aguayo*, *supra*, pág. 814.

En esa dirección, en el precitado caso *Díaz v. Aguayo*, *supra*, luego del divorcio y previo a la liquidación de la comunidad de bienes postganancial, el señor Aguayo Leal ocupó cierta residencia perteneciente a la comunidad, junto a su nueva esposa. En esa ocasión, rechazamos el argumento del señor Aguayo Leal en cuanto a que la señora Díaz Lizardi nunca mostró interés en vivir en la casa ni en retener los bienes muebles adquiridos en común, así como que esta última tenía que presentar un interdicto para avalar su derecho a un crédito. De esa manera, concluimos que el señor Aguayo Leal poseyó los bienes comunales y los utilizó para su beneficio exclusivo, sin el consentimiento de la señora Díaz Lizardi, por lo cual procedía la compensación.

De otra parte, este Tribunal también ha expresado que, para tener derecho al pago de una compensación, el

comunero que alega haber sido excluido de su participación en la comunidad deberá identificar un acto obstativo que suponga tal exclusión. En la alternativa, éste deberá realizar un requerimiento afirmativo solicitando su derecho a ser compensando. *Molina González v. Álvarez Gerena*, 2019 TSPR 191, 203 DPR ___ (2019).

Es, pues, a la luz de la normativa antes expuesta, y no de otra, que procedía disponer de la causa de epígrafe. Como una mayoría del Tribunal no lo hizo de esta manera, procedemos a así hacerlo.

III.

Como mencionamos anteriormente, en el presente caso el señor Rodríguez Amador ocupó la propiedad aquí en controversia en diciembre de 2008. Es a partir de dicha fecha que se configuró el acto obstativo que exige nuestro ordenamiento jurídico para dar paso a la compensación del excónyuge excluido del uso y disfrute de determinado bien, en este caso, perteneciente a la comunidad de bienes postganancial.

El acto obstativo al que hemos hecho referencia consistió en la decisión del señor Rodríguez Amador de mudarse al inmueble ubicado en la Urbanización Andrea's Court. Decisión que provocó que -- una vez se ordenó la disolución del vínculo matrimonial con la señora Rivera Lamberty -- esta última estuviera impedida de utilizar el inmueble, pues el mismo lo estaba ocupando el señor

Rodríguez Amador y ninguno de ellos tenía interés en la mutua convivencia. Es desde esta fecha que procede realizar el cómputo de la compensación a la cual la señora Rivera Lamberty tiene derecho.

En fin, la señora Rivera Lamberty tiene derecho a que se le pague un crédito desde diciembre de 2008, fecha en que se le impidió el uso y disfrute de la mencionada propiedad perteneciente a la comunidad de bienes postganancial habida entre el señor Rodríguez Amador y ésta. Ahora bien, ello es sin perjuicio del derecho que pueda ostentar el señor Rodríguez Amador de obtener un crédito por los pagos de hipoteca, así como por los gastos de mantenimiento del referido inmueble que éste realizó desde 2008 hasta 2016. Esto es lo justo.

## IV.

Por no ser ese el resultado al que se llega en la *Sentencia* que hoy emite este Tribunal, respetuosamente disentimos.

Ángel Colón Pérez
Juez Asociado